UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ALBERT GOODMAN,

|  |  |
|---|---|
| Plaintiff, | Case No. 4:20-cv-13368 |
|  | District Judge Stephanie Dawkins Davis |
| v. | Magistrate Judge Anthony P. Patti |
| T. SCHUBRING, *et al*., |  |
| Defendants. |  |

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 22) AND GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 17)

I.     **RECOMMENDATION**: The Court should **DENY** Plaintiff's motion for partial summary judgment (ECF No. 22), **GRANT** Defendants' motion for summary judgment (ECF No. 17), and **DISMISS** the claims against Defendants Timothy Schubring and Amy Coffelt.

II.     **REPORT**

    **A.     Background**

        **1.     Factual Background**

On December 10, 2020, while incarcerated at G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, Plaintiff James Albert Goodman[1], proceeding *in pro per*, filed the instant action pursuant to 42 U.S.C. § 1983 against Defendants JCF Cook Lisa Stevens, JCF Food Service Director Amy Coffelt, and JCF Facility Manager Timothy Schubring, alleging violations of his Eighth Amendment rights and Article 1, § 16 of the Michigan Constitution, the latter of which states that, "Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained.". (ECF No. 1.)[2]  The underlying facts, as alleged, are as follows.  On March 25, 2019, Stevens, who served as Plaintiff's supervisor in the Food Service Department, ordered him to use the "Hobart Machine" to cut onions and peppers, even though she knew or should have known he had not been properly trained. (ECF No. 1, PageID.42-43.)  While using the machine, Plaintiff sliced two fingers

---

[1] Plaintiff lists his name on his case filings as James Albert Goodman Bey, prisoner No. 227294; however, he is listed on the Court's docket and in the Michigan Department of Corrections (MDOC) as James Albert Goodman, currently housed at the G. Robert Cotton Correctional Facility, which is the name by which he is referred herein. Offender Search, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=227294, last checked January 17, 2022.

[2] It is unclear whether Plaintiff intends to sue Defendants in both their individual and official capacities, or individual capacities only.  He checked the box for both in relation to Schubring (ECF No. 1, PageID.37), but stated that he wished to sue Stevens in her individual capacity (ECF No. 1, PageID.42), and a page which likely further identifies the parties appears to be missing from the complaint.

on his right hand.  (ECF No. 1, PageID.43.)  Stevens then violated policy by not

completing an injury report, and Schubring and Coffelt pressured him to sign off

on the grievance he filed regarding the incident.  (ECF No. 1, PageID.43-45, 47.)

According to Plaintiff, Defendants are all liable for his injuries because they failed

to train him on proper use of the machine.  (ECF No. 1, PageID.48-50.)

On March 26, 2019, Plaintiff filed his grievance regarding the incident (JCF-

2019-04-0578-03D), stating:

> On March 25, 2019 while on assignment at food service, I was giving
> [sic] an order by food service supervisor Stevenson [sic] to cut onions
> & peppers.  I complied with the order, by using the cutting machine in
> which I was not trained to operate in the process of using this machine
> my middle finger and ring finger were cut on my right hand, which
> caused me to have to go to hospital by emergency.  And recieve [sic]
> stitches and serious medical care.  I was never offered an opportunity
> to learn how to operate this machine.

(Step III Grievance Report, Exhibit 2 to Defendants' MSJ, ECF No. 17-3,

PageID.124.)  Schubring was the Step I respondent, but neither he nor Coffelt were

named in the grievance.  (ECF No. 17-3, PageID.124.)

Schubring, who was Food Service Director at the time of the incident,

signed the Step I response on April 23, 2019.  The Investigation Summary states:

> After speaking with staff and reviewing video footage of the event,
> you were using the guard properly while cutting the green peppers
> which matches the statements of staff that you were verbally trained
> on how to use the machine and were observed using the guards
> properly before the event.  When you were observed looking into the
> machine where the food is loaded, then putting your empty hand
> directly into the spinning blade.  Food Service Supervisor Stevens

3

stated that she did not give you a direct order to use the machine, she
gave prisoner Grady direction to cut the green peppers and onions.
You did not notify staff that you were not given formal documented
training on the machine before using it, and chose to use it on your
own accord.  There are other options for cutting green peppers and
onions without using the machine that include hand chopping.  You
were escor[t]ed off facility grounds and given proper medical
treatment and follow up as needed for your injuries.  You were
formally trained and it was documented on 3/29/19 when you returned
to work.

(ECF No. 17-3, PageID.125.)  And the Decision Summary provides:

During our interview on 4/5/19, you stated that to resolve this issue,
you want to be properly trained, and you want to make sure that
everyone is properly trained for the equipment that they use.  We
provided formal documented training to you on 3/29/19.  We also
implemented an updated procedure that prisoners will receive formal
documented training for all new equipment before a change of
position request will be submitted.  You received the necessary
medical treatment and follow up.  You will be paid for the days off
that you missed because of the issue.  Grievance is resolved at step 1.

(ECF No. 17-3, PageID.125.)

Plaintiff filed his Step II appeal on May 9, 2019, stating that all issues and

parties from Step I should carry over to Step II, and that staff must be held

accountable because Step I clearly indicates that training occurred after the

incident.  (ECF No. 17-3, PageID.122.)  The Step II grievance response, signed by

the Warden and dated June 10, 2019, states that Plaintiff provided no new

information at Step II.  (ECF No. 17-3, PageID.123.)  Thus, his Step II appeal was

denied.  (ECF No. 17-3, PageID.123.)

Finally, Plaintiff added no additional information to his Step III grievance appeal, which was denied on August 6, 2019, because the issue was "considered, investigated, and a proper decision was rendered."  (ECF No. 17-3, PageID.121-122.)

### 2.    Instant Motions

On July 12, 2021, Schubring and Coffelt (collectively Defendants hereinafter for purposes of this Report and Recommendation)[3] filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(a), asserting that Plaintiff failed to exhaust his administrative remedies on the claims against them because the relevant grievance failed to identify or name either in contravention of Michigan Department of Corrections (MDOC) Policy Directive (PD) 03.02.130.  (ECF No. 17, PageID.96-106.)

On October 13, 2021, nearly a week after the date by which the Court ordered Plaintiff to file his response (ECF No. 20), Plaintiff filed his own motion for partial summary judgment (ECF No. 22).  I will construe this as both a cross-motion for summary judgment as well as Plaintiff's response to Defendants'

---

[3] The docket does not reflect that service has yet been completed against Stevens, but the Court ordered the Michigan Department of Corrections (MDOC) to provide a last known address for service in October 2021 (ECF No. 24), and the USMS acknowledged receipt of service of process documents for Stevens on December 2, 2021 (ECF No. 26).

motion.  He asserts that: (1) material issues of fact remain regarding the danger

posed by the Hobart Machine and Defendants' failure to train; (2) under *Reed-Bey*

*v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), Defendants waived their exhaustion

argument by deciding his grievance on the merits through Step III, despite his

failure to identify the names of all those involved in the incident; (3) Defendants

failed to respond to the claims in his complaint; and (4) Stevens either refused

service or was never served.  (ECF No. 22, PageID.148-149, 151, 159-165.)

Defendants filed a response to Plaintiff's motion for partial summary

judgment on November 3, 2021, arguing that the Court should deny Plaintiff's

motion for the same reason it should grant theirs, and that Plaintiff's case is

distinguishable from *Reed-Bey* because:

> It is undisputed that [Plaintiff] did not identify Schubring or Coffelt at
> any steps of JCF-578.  It is also undisputed that [Plaintiff] did not
> include, at any steps of JCF-578, any language to suggest that the
> grievance was against any individual other than the one he explicitly
> named, i.e., Stevens.  In short, [Plaintiff] could not and did not
> exhaust any claims against Schubring or Coffelt with JCF-578.

(ECF No. 25, PageID.181-184.)  In his untimely[4] December 7, 2021 reply brief,

Plaintiff reiterates the arguments made in his motion for partial summary

judgment, and further states:

> This Court should take Notice, it Appears Defendant's T. Schubring,
> A. Coffelt and Defendant's counsel are hoping this case will be
> dismissed without Defendant Lisa Stevens filing a response.

---

[4] *See* E.D. Mich. Local Rule 7.1(e)(2)(B).

Defendants have still not filed a response to Plaintiff Goodman Bey's
Complaint.  That, until Defendants file a response to the Plaintiff's
Goodman Bey's Verified Complaint, Defendants Motion for
Summary Judgment should be denied.

(ECF No. 27, PageID.188-192.)

### B.    Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material if it might affect the outcome of the case under governing law.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence,

all facts, and any inferences that may be drawn from the facts in the light most

favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95

F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing

that if a party "fails to properly address another party's assertion of fact," the court

may "consider the fact undisputed for purposes of the motion").  "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"

8

*Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.    Discussion

#### 1.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*., a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S.

516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper* exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).  "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.)" *Id*. at 90 (quotation marks and citation omitted).  As long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*,

No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal quotation marks and citation omitted).  That said, a court "is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and recommendation adopted in part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

Finally, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id*. at 212-13. As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

## 2. Grievance procedures at the MDOC

Pursuant to PD 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows.  First, the inmate must attempt to resolve the issues with the staff member involved within two business days of becoming aware of a grievable issue.  (MDOC PD. 03.02.130, Exhibit 1 to Defendants' MSJ, ECF No. 17-2, ¶ Q.)  If the issues are not resolved, within five business days, the inmate may file a Step I grievance using the appropriate form. (ECF No. 17-2, ¶ Q.)  "Dates, times, places, and names of all those involved in the

11

issue being grieved are to be included." (ECF No. 17-2, ¶ S.)  The inmate should receive a response at Step I within fifteen business days of filing the grievance. (ECF No. 17-2, ¶ Z.)

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (ECF No. 17-2, ¶ DD.)  As with Step I, the inmate should receive the Step II response within fifteen business days.  (ECF No. 17-2, ¶¶ EE.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF No. 17-2, ¶ HH.)  "To file a Step III grievance, the grievant must send a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."  (ECF No. 17-2, ¶¶ HH.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

> **3.** **The Court should find that Plaintiff has failed to exhaust his administrative remedies against Schubring and Coffelt**

First, to the extent Plaintiff asserts, in his own motion for partial summary judgment, that he is entitled to summary judgment against Stevens, Schubring, and Coffelt for failure to respond to the claims in his complaint (ECF No. 22, PageID.149, 151, 164; ECF No. 27, PageID.192), his argument lacks merit. As provided above, the docket does not reflect that service has yet been completed against Stevens, but the Court ordered the MDOC to provide a last known address for service in October 2021 (ECF No. 24), and the USMS acknowledged receipt of service of process documents for Stevens on December 2, 2021 (ECF No. 26). And Schubring and Coffelt filed the instant summary judgment motion on the basis of exhaustion, which serves as an appropriate response to Plaintiff's complaint. More was not required of them, as the PLRA provides that:

> Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law. Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed.

42 U.S.C. § 1997e(g)(1). *Nouri v. Oakland Cty. Jail*, No. 2:10-cv-13700, 2011 WL 2144639, at *3 (E.D. Mich. May 9, 2011) (Michelson, M.J.), *report and recommendation adopted*, No. 10-13700, 2011 WL 2135372 (E.D. Mich. May 31, 2011) (Tarnow, J.) ("As the Supreme Court has explained, pursuant to this provision 'unlike in the typical civil case, defendants do not have to respond to a

complaint covered by the PLRA until required to do so by the court, and waiving the right to reply does not constitute an admission of the allegations in the complaint.'") (quoting *Jones*, 549 U.S. at 213–14).  While the Court could have required Defendants to file a "reply" or answer under the PLRA, here it did not. 42 U.S.C. § 1997e(g)(2).

Defendants assert entitlement to summary judgment on the basis of exhaustion, because Plaintiff failed to name either in his grievance regarding the incident.  (ECF No. 17, PageID.97-105; ECF No. 25, PageID.181-184.)  Plaintiff admits that he did not name Schubring or Coffelt, but argues that Defendants waived any exhaustion argument on this basis by deciding the grievance on the merits through Step III.  (ECF No. 22, PageID.160-164; ECF No. 27, PageID.188-192.)  For the reasons that follow, I agree with Defendants.

"Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and *names of all those involved* in the issue being grieved' in their initial grievance."  *Reed-Bey*, 603 F.3d at 324 (emphasis added).  Plaintiff correctly points out that in *Reed-Bey*, 603 F.3d at 325, the Sixth Circuit held that "[w]hen prison officials decline to enforce their own procedural requirements," like the naming requirement, and "opt to consider otherwise-defaulted claims on the merits," they generally waive any exhaustion argument on the basis of that procedural requirement.  However, "[i]n *Reed-Bey*, the inmate

14

failed to name a single individual in his grievance, and it would have thus been clear to prison officials when they addressed the merits of the grievance that they were waiving their own procedural requirement to include the names of those involved in the grievance." *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019) (citing *Reed-Bey*, 603 F.3d at 324), *cert. denied*, 140 S.Ct. 1157 (2020).

Here, <u>Plaintiff named Stevens</u>, and gave no indication in his Step I grievance that he intended to grieve any additional individuals or on what basis. And although Schubring's name appears at Step I, it is only because he served *as respondent* to the grievance in his role as "Food Service Director at the time of incident" (along with S. Bailey, Facilities Manager), not as the person whose actions were identified as the subject of the grievance. (ECF No. 17-3, PageID.124-125.) In this instance, prison officials would have assumed Plaintiff complied with the naming requirement, deciding the grievances on the merits as to Stevens only, "and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit." *Brown*, 2019 WL 5436159, at *3 (citing *Luther v. White*, No. 5:17-CV-138-TBR, 2019 WL 511795, at *8 (W.D. Ky. Feb. 8, 2019)). Accordingly, Schubring and Coffelt are entitled to summary judgment on Plaintiff's claims against them because Plaintiff failed to exhaust those claims by naming either in

his Step I grievance.  *Id.  See also Lee v. Willey*, 789 F.3d 673, 688-81 (6th Cir. 2015); *Dykes-Bey v. Finco*, No. 20-1624, 2021 WL 2767584, at *2 (6th Cir. Feb. 2, 2021).  Moreover, where a defendant's only role in a lawsuit involves "the denial of administrative grievances or the failure to act . . . [he or she] cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Liability under 42 U.S.C. § 1983 "must be based on more than respondeat superior, or the right to control employees." *Id.*  It "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* (quoting *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), *cert. denied*, 526 U.S. 1115 (1999)).[5]

### D.    Conclusion

The Court should **DENY** Plaintiff's motion for partial summary judgment (ECF No. 22), **GRANT** Defendants' motion for summary judgment (ECF No. 17), and **DISMISS** the claims against Defendants Timothy Schubring and Amy Coffelt.

---

[5] Even if the Court were to find that these two defendants were properly grieved, or that they were direct actors, the standard for establishing "cruel and unusual punishment" under the Eighth Amendment (or the Michigan Constitution) in connection with what appears on its face to be, at best, a negligent failure to properly train claim, is not likely to be met here.  "Mere negligence is not sufficient to violate the Eighth Amendment[.]" *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  January 19, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE